## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JAMES BOYD, individually and on behalf of a class of similarly situated individuals | ) ) ) | |
| Plaintiff, | ) | Case No. |
| v. | ) ) | |
| LAZER SPOT, INC., a Georgia corporation, | ) ) ) | |
| Defendant. | ) ) | |

## NOTICE OF REMOVAL

Defendant Lazer Spot, Inc. ("Lazer Spot" or "Defendant"), pursuant to 28 U.S.C. § 1446 and the jurisdictional provisions of the Class Action Fairness Act of 2005, codified at 28 U.S.C. §§ 1332(d)(2) and 1453(b), and alternatively, 28 U.S.C. § 1332(a), hereby gives notice of the removal of this action from the Circuit Court of Cook County, Illinois, Chancery Division, to the United States District Court for the Northern District of Illinois, Eastern Division. The grounds for removal are as follows:

## BACKGROUND

1.     On October 28, 2019, Plaintiff James Boyd ("Plaintiff") filed a putative class action against Lazer Spot in the Circuit Court of Cook County, Illinois, Chancery Division, a court located within this district, under Case Number 2019-CH-12511 (the "State Court Action"). A copy of the Complaint, summons, and all other process served on Lazer Spot in the State Court Action is attached hereto as **Exhibit A** pursuant to 28 U.S.C. § 1446(a).

2.     The Complaint asserts three causes of action against Lazer Spot for alleged violations of the Illinois Biometric Information Privacy Act, 740 ILCS § 14/1 *et seq*. ("BIPA"): (1) failing to institute, maintain and adhere to a written, publicly-available retention schedule of

biometric data (Compl. ¶¶ 68-76); (2) failing to obtain informed written consent and release before obtaining biometric identifiers or information (Compl. ¶¶ 77-86); and (3) the disclosure of biometric identifiers and information before obtaining consent. (Compl. ¶¶ 87-95.)

3.      Lazer Spot has not filed an answer or otherwise responded to the Complaint in the State Court Action.

## THE PROCEDURAL REQUIREMENTS ARE MET

4.      Venue is proper. This Court is the United States District Court for the district and division in which the State Court Action is pending. Plaintiff alleges that he is a citizen of the State of Illinois, and that the alleged statutory violations occurred within Cook County, *i.e.*, this District. (Compl. ¶¶ 16, 18-19.) Venue for this removal is therefore proper. 28 U.S.C. § 1441(a); *see also* 28 U.S.C. § 93(a)(1) (stating this Court encompasses Cook County).

5.      Removal is timely. Lazer Spot serves this Notice of Removal within 30 days after being served with process in the State Court Action on November 14, 2019. *See* Exhibit A. This removal is therefore timely. 28 U.S.C. § 1446(b).

6.      Notice of the removal will be filed in the State Court Action. Lazer Spot is serving this Notice of Removal on Plaintiff's counsel of record and filing a Notice of Filing Notice of Removal with the Clerk of the Circuit Court of Cook County, attaching a copy of this Notice of Removal. 28 U.S.C. § 1446(d).

## REMOVAL IS PROPER BASED ON DIVERSITY JURISDICTION

### I.      Removal Is Proper Based on CAFA.

7.      A defendant has a right to remove a state court action to a federal district court where the district has original jurisdiction over the action. *See* 28 U.S.C. § 1441(a). The Class Action Fairness Act of 2005 ("CAFA") extends federal jurisdiction to all putative class actions in

which (A) there are 100 or more members of the putative class; (B) there is minimal diversity—at least one member of the proposed class is a citizen of a state different from any defendant; and (C) the aggregated claims of the individual class members exceed the sum or value of $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(d)(2), (5), and (6). Based on the allegations in Plaintiff's Complaint, which Lazer Spot does not espouse and expressly denies, this case satisfies these requirements.

    **A.    As Pled, This Case Is a "Class Action" Involving More Than 100 Putative Class Members.**

8.    For purposes of 28 U.S.C. § 1332(d), a "class action" is defined as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action[.]" 28 U.S.C. § 1332(d)(1)(B).

9.    Plaintiff purports to bring his claims pursuant to 735 ILCS 5/2-801, a state statute authorizing an action by one or more representative persons as a class action. Specifically, Plaintiff alleges that he is bringing claims on behalf of a proposed class of "[a]ll individuals working for Defendant in the State of Illinois who had their fingerprints collected, captured, received, obtained, maintained, stored, or disclosed by Defendant during the applicable statutory period." (Compl. ¶ 58.)

10.    Lazer Spot employs or has employed in excess of 484 persons, who are or may be putative class members. *See* Affidavit of Dan Thomas at ¶ 5, attached hereto as **Exhibit B**.

    **B.    The Parties Are Diverse.**

11.    Lazer Spot is a corporation incorporated under the laws of Georgia with its principal place of business located in Alpharetta, Georgia. *See* Exhibit B at ¶ 4; *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010) (stating a corporation's principle place of business is where

"a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's nerve center …."). For purposes of 28 U.S.C. § 1332, Lazer Spot is a citizen of Georgia.

12. Plaintiff alleges that he is a citizen of Illinois. (Compl. ¶ 16.) For purposes of 28 U.S.C. § 1332, Plaintiff is a citizen of Illinois.

13. Plaintiff purports to bring claims on behalf of a class that includes only those who worked for Lazer Spot "in the State of Illinois[.]" (Compl. ¶ 58.) Because Lazer Spot and Plaintiff (and, likely, every putative class member of the alleged class) are citizens of different states, the parties are diverse for purposes of 28 U.S.C. § 1332(d).

14. Lazer Spot is not a citizen of Illinois, and thus there is no basis from which the Court must decline to exercise jurisdiction pursuant to 28 U.S.C. § 1332(d)(4)(A) or (B).

**C.** **The Amount in Controversy Exceeds $5,000,000, Exclusive of Interest and Costs.**

15. For purposes of determining the amount in controversy in a class action under CAFA, "the claims of the individual members shall be aggregated." 28 U.S.C. § 1332(d)(6). Lazer Spot disputes the validity of Plaintiff's claims and allegations, including but not limited to Plaintiff's and the putative class' entitlement to any damages and asserts that neither Plaintiff nor any putative class member is entitled to any relief as a matter of law. Nonetheless, for purposes of determining whether federal jurisdiction exists, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

16. Plaintiff seeks statutory damages for himself and each putative class member in the amount of $5,000 for each intentional and/or reckless violation of BIPA, and $1,000 for each negligent violation of BIPA. (*See* Compl., Prayer for Relief (A) and (C).) Plaintiff alleges that Lazer Spot violated BIPA in multiple ways, on multiple occasions with respect to himself and

the putative class. Specifically, Plaintiff alleges that Lazer Spot violated BIPA by (1) failing to institute, maintain and adhere to a written, publicly-available retention schedule of biometric data (Compl. ¶¶ 68-76); (2) failing to obtain informed written consent and release before obtaining biometric identifiers or information (Compl. ¶¶ 77-86); and (3) the disclosure of biometric identifiers and information before obtaining consent. (Compl. ¶¶ 87-95.) Plaintiff seeks damages on behalf of himself and the putative class for *each* alleged violation. (*See* Compl. ¶¶ 23, 76, 86, 95.)

17.     As alleged, in the aggregate, Plaintiff's putative class claims exceed $5,000,000 in value, exclusive of interest and costs.

**II.     Removal Is Proper Based Under 28 U.S.C. § 1332(a).**

18.     In addition to removal based upon CAFA, *supra*, removal is also proper under traditional federal diversity jurisdiction. 28 U.S.C. § 1332(a). This Court has original jurisdiction over civil actions where (A) "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and" (B) is "between citizens of different States[.]" *Id*. at (a)(1).

**A.     The Amount in Controversy Exceeds $75,000, Exclusive of Interest and Costs.**

19.     Although brought as a putative class action, Plaintiff's claims alone, as alleged, meet the requisite amount in controversy. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006) ("Once one plaintiff satisfies the amount-in-controversy requirement for diversity jurisdiction, the other plaintiffs come in under the court's supplemental jurisdiction"); *Karpowicz v. Gen. Motors Corp.*, No. 97 C 1390, 1997 WL 156542, at *4 (N.D. Ill. Mar. 28, 1997) ("it is sufficient for jurisdictional purposes if the class representative meets the jurisdictional amount; the claims of the non-representative class members may fail to meet the jurisdictional amount while still falling within the court's supplemental jurisdiction.").

5

20. Plaintiff seeks damages on behalf of himself for *each* alleged BIPA violation in the amount of $5,000 for each intentional and/or reckless violation of BIPA, and $1,000 for each negligent violation. (*See* Compl. ¶¶ 23, 76, 86, 95; *see also* Compl., Prayer for Relief (A) and (C).)

21. Plaintiff alleges that he worked for Lazer Spot for some 19 months. (Compl. ¶ 45.) During that period, Lazer Spot is alleged to have "scanned, collected and/or obtained [Plaintiff]'s finger so [Lazer Spot] could use it as an authentication method to track his time." (Compl. ¶ 46.) "Plaintiff scanned his fingerprint *each* time he clocked in for work and clocked out of work, using [Defendant]'s biometric timekeeping device." (Compl. ¶ 48 (emphasis added).)

22. Plaintiff here clocked in and out of work more than 50 times, allegedly using his fingerprint, over the course of his employment at Lazer Spot. Exhibit B at ¶ 6.

23. While Lazer Spot denies that Plaintiff and the proposed class are entitled to any recovery, the Complaint plainly demonstrates that Plaintiff seeks over $75,000 in monetary damages. *See*, *e.g.*, *Peatry v. Bimbo Bakeries USA, Inc.*, 393 F. Supp. 3d 766, 769 (N.D. Ill. 2019) (finding removal proper where "[t]reating each scan as a separate [BIPA] violation, [plaintiff] would only need to have scanned her fingerprint sixteen times to exceed the $75,000 threshold, which she plausibly did many more times over the course of her thirty months of employment.").

**B.    The Parties Are Diverse.**

24. For purposes of 28 U.S.C. § 1332, Lazer Spot is a citizen of Georgia and Plaintiff is a citizen of Illinois. *See supra* ¶¶ 11, 12.

25.     The parties are diverse under 28 U.S.C. § 1332(a)(1) and the amount in controversy is satisfied, thus removal is also proper under 28 U.S.C. § 1332(a).

**NON-WAIVER OF DEFENSES**

26.     By this Notice of Removal, Lazer Spot does not waive any defenses that may be available, including, without limitation, Plaintiff's failure to state a claim or any other defense.

27.     By this Notice of Removal, Lazer Spot does not admit any of the allegations in Plaintiff's Complaint.

**CONCLUSION**

28.     For all the foregoing reasons, removal is proper and this Court has original jurisdiction over this case.

**WHEREFORE**, notice is hereby given that this action is removed from the Circuit Court of Cook County, Illinois, Chancery Division, to the United States District Court for the Northern District of Illinois, Eastern Division.

Dated: December 13, 2019                    Respectfully Submitted,

                                            /s/ Eric L. Samore

                                            Eric L.  Samore ARDC # 6181345
                                            John C. Ochoa ARDC # 6302680
                                            SMITHAMUNDSEN LLC
                                            150 N. Michigan Avenue, Suite 3300
                                            Chicago, Illinois 60601
                                            (312) 894-3200
                                            esamore@salawus.com
                                            jochoa@salawus.com

                                            *Counsel for Defendant Lazer Spot, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on December 13, 2019, he caused a copy of the attached **Notice of Removal** to be served upon the parties below via e-mail and First Class Mail from 150 N. Michigan Ave., Ste. 3300, Chicago, Illinois 60601:

> Ryan F. Stephan
> James B. Zouras
> STEPHAN ZOURAS, LLP
> 100 N. Riverside Plaza
> Suite 2150
> Chicago, Illinois 60606
> rstephan@stephanzouras.com
> jzouras@stephanzouras.com

<u>/s/ Eric L. Samore</u>

# Exhibit A

FILED
11/21/2019 9:48 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY
2019CH12511

7455417



## SANGAMON COUNTY SHERIFFS OFFICE
### "Keeping the Peace Since 1821"

*JACK CAMPBELL*
#1 Sheriffs Plaza
Springfield, IL 62701

Administration - (217) 753-6855
Records - (217) 753-6846

Investigations - (217) 753-6840
Corrections - (217) 753-6886

SG TRACKING #19- 7083

I, __T. Roderick__ certify that I served this summons as follows:

☐ Personal service on an individual, by leaving a copy of the summons and complaint with the defendant personally

☐ Abode service on an individual, by leaving a copy of the summons and complaint with a member of the household thirteen (13) years or older, informing said person of the contents thereof, and also by sending a copy of the summons, in a sealed envelope, postage paid, to the individual listed in the summons.

☒ Corporation service, by leaving a copy of the summons and complaint with an agent or officer of the corporation listed in the summons.

☐ Other service, as described below.

Case Number __19 CH 12511__

Name of defendant __Lazer Spot Inc__

Name of other person
Summons left with __Tyler Fuchs__

Sex: ( M / F )  Race: __W__  Approx. Age: __30s__

Date of Service __11/14/19__ /2019  Time __9:10__

Date of Mailing _____

Address at which paper was served:

__801 Adlai Stevenson Dr.__

__Spfld, IL__

Service fees (Circle One) __$50.00__ or $100.00

Circle One:  PAID  PAUPER  NO CHARGE

Jack Campbell, Sheriff of Sangamon County Sheriff's Office

By __T. Roderick__ , Deputy # __3321__

## IN PARTNERSHIP WITH THE COMMUNITY

FILED
10/28/2019 1:30 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH12511

7131095

FILED DATE: 10/28/2019 1:30 PM   2019CH12511

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| **JAMES BOYD, individually,** | ) | |
| **and on behalf of all others similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.** |
| **v.** | ) | |
| | ) | |
| **LAZER SPOT, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## CLASS ACTION COMPLAINT

Plaintiff James Boyd ("Boyd" or "Plaintiff"), by and through his attorneys, individually and on behalf of all others similarly situated (the "Class"), brings the following Class Action Complaint ("Complaint") pursuant to the Illinois Code of Civil Procedure, 735 ILCS §§ 5/2-801 and 2-802, against Lazer Spot, Inc. ("Lazer Spot" or "Defendant"), its subsidiaries and affiliates, to redress and curtail Defendant's unlawful collection, use, storage, and disclosure of Plaintiff's sensitive biometric data. Plaintiff alleges as follows upon personal knowledge as to himself, his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### NATURE OF THE ACTION

1.       Defendant Lazer Spot, Inc. is a North American logistics company that provides yard management services and is headquartered at 6525 Shiloh Road, Alpharetta, GA 30005.

1

FILED DATE: 10/28/2019 1:30 PM   2019CH12511

2.      Companies, such as manufacturers and retailers, hire Defendant to manage the transportation of freight trailers at their production plants and distribution centers (hereafter "Clients").

3.      Defendant places employees at its Clients' locations, where they are responsible for the logistics of moving freight trailers around Clients' yards or between the Clients' yard and outside trailer yards.

4.      Upon information and belief, when Defendant hires an employee, including Plaintiff, he or she is enrolled in an employee database shared and maintained by and between Defendant to monitor the time worked by hourly employees.

5.      While many employers use conventional methods for tracking time worked (such as ID badge swipes or punch clocks), Defendant's employees are required to have their fingerprints scanned by a biometric timekeeping device.

6.      Unlike ID badges or time cards – which can be changed or replaced if stolen or compromised – fingerprints are unique, permanent biometric identifiers associated with each employee. This exposes Defendant's employees to serious and irreversible privacy risks. For example, if a database containing fingerprints or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed – like in the recent Yahoo, eBay, Equifax, Uber, Home Depot, MyFitnessPal, Panera, Whole Foods, Chipotle, Omni Hotels & Resorts, Trump Hotels, Facebook/Cambridge Analytica, and Suprema data breaches or misuses – employees have __*no*__ means by which to prevent identity theft, unauthorized tracking or other unlawful or improper use of this highly personal and private information.

7.      Biometrics are not relegated to esoteric corners of commerce. Many businesses – such as Defendant's – and financial institutions have incorporated biometric applications into their

FILED DATE: 10/28/2019 1:30 PM   2019CH12511

workplace in the form of biometric timeclocks, and into consumer products, including such ubiquitous consumer products as checking accounts and cell phones.

8.      In 2015, a data breach at the United States Office of Personnel Management exposed the personal identification information, including biometric data, of over 21.5 million federal employees, contractors, and job applicants. U.S. Off. of Personnel Mgmt., *Cybersecurity Incidents* (2018), *available at* https://www.opm.gov/cybersecurity/cybersecurity-incidents.

9.      An illegal market already exists for biometric data. Hackers and identity thieves have targeted Aadhaar, the largest biometric database in the world, which contains the personal and biometric data – including fingerprints, iris scans, and a facial photograph – of over a billion Indian citizens. *See* Vidhi Doshi, *A Security Breach in India Has Left a Billion People at Risk of Identity Theft*, The Washington Post (Jan. 4, 2018), *available at* https://www.washingtonpost.com/news/worldviews/wp/2018/01/04/a-security-breach-in-india-has-left-a-billion-people-at-risk-of-identity-theft/?utm_term=.b3c70259fl38. In January 2018, an Indian newspaper reported that the information housed in Aadhaar was available for purchase for less than $8 and in as little as 10 minutes. Rachna Khaira, *Rs 500, 10 Minutes, and You Have Access to Billion Aadhaar Details*, The Tribune (Jan. 4, 2018), *available at* http://www.tribuneindia.com/news/nation/rs-500-10-minutes-and-you-have-access-to-billion-aadhaar-details/523361.html.

10.      In the United States, law enforcement, including the Federal Bureau of Investigation and Immigration and Customs Enforcement, have attempted to turn states' Department of Motor Vehicles databases into biometric data goldmines, using facial recognition technology to scan the faces of thousands of citizens, all without their notice or consent. Drew Harwell, *FBI, ICE Find State Driver's License Photos Are a Gold Mine for Facial-Recognition*

FILED DATE: 10/28/2019 1:30 PM   2019CH12511

*Searches*, The Washington Post (July 7, 2019), *available at* https://www.washingtonpost.com/ technology/2019/07/07/fbi-ice-find-state-drivers-license-photos-are-gold-mine-facial-recognition-searches/?noredirect=on&utm_term=.da9afb2472a9.

11.     This practice has been criticized by lawmakers. Some states, including Illinois, have refused to comply with law enforcement's invasive requests. *State Denying Facial Recognition Requests*, Jacksonville Journal-Courier (July 9, 2019), *available at* https://www.myjournalcourier.com/news/article/State-denying-facial-recognition-requests-14081967.php.

12.     In August 2018, it was widely reported that Suprema, a security company responsible for a web-based biometrics lock system that uses fingerprints and facial geometry scans in 1.5 million locations around the world, maintained biometric data and other personal information on a publicly accessible, unencrypted database. *Major Breach Found in Biometrics System Used by Banks, UK police and Defence Firms*, The Guardian (Aug. 14, 2019), *available at* https://www.theguardian.com/technology/2019/aug/14/major-breach-found-in-biometrics-system-used-by-banks-uk-police-and-defence-firms.

13.     Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act ("BIPA"), 740 ILCS § 14/1, *et seq.*, specifically to regulate companies that collect and store Illinois citizens' biometrics, such as fingerprints.

14.     Notwithstanding the clear and unequivocal requirements of the law, Defendant disregards employees' statutorily protected privacy rights and unlawfully collects, stores, disseminates, and uses its employees' biometric data in violation of BIPA. Specifically, Defendant has violated and continues to violate BIPA because it did not and continues not to:

FILED DATE: 10/28/2019 1:30 PM   2019CH12511

a.  Properly inform Plaintiff and others similarly situated in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used, as required by BIPA;

b.  Receive a written release from Plaintiff and others similarly situated to collect, store, or otherwise use their fingerprints, as required by BIPA;

c.  Publish a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' fingerprints, as required by BIPA; and

d.  Obtain consent from Plaintiff and others similarly situated to disclose, redisclose, or otherwise disseminate their fingerprints to a third party as required by BIPA.

15.     Accordingly, Plaintiff seeks an Order: (1) declaring that Defendant's conduct violates BIPA; (2) requiring Defendant to cease the unlawful activities discussed herein; and (3) awarding statutory damages to Plaintiff and the proposed Class.

## PARTIES

16.     Plaintiff James Boyd is a natural person and a citizen of the State of Illinois.

17.     Defendant Lazer Spot, Inc. is a corporation that is registered with the Illinois Secretary of State and conducts business in the State of Illinois, including Cook County.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over Defendant pursuant to 735 ILCS § 5/2-209 because it conducts business transactions in Illinois, committed statutory violations and tortious acts in Illinois, and is registered to conduct business in Illinois.

19.     Venue is proper in Cook County because Defendant is authorized to conduct business in this State, Defendant conducts business transactions in Cook County, and Defendant committed the statutory violations alleged herein in Cook County.

FILED DATE: 10/28/2019 1:30 PM   2019CH12511

## FACTUAL BACKGROUND

**I.      The Biometric Information Privacy Act**

20.      In the early 2000s, major national corporations started using Chicago and other locations in Illinois to test "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS § 14/5(c). Given its relative infancy, an overwhelming portion of the public became wary of this then-growing yet unregulated technology. *See* 740 ILCS § 14/5.

21.      In late 2007, a biometrics company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records – which, like other unique biometric identifiers, can be linked to people's sensitive financial and personal data – could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who used the company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

22.      Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS § 14/5.

23.      Additionally, to ensure compliance, BIPA provides that, for <u>each</u> violation, the prevailing party may recover $1,000 or actual damages, whichever is greater, for negligent

violations and $5,000, or actual damages, whichever is greater, for intentional or reckless violations. 740 ILCS § 14/20.

24. BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

a. Informs the subject in writing that a biometric identifier or biometric information is being collected, stored and used;

b. Informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

c. Receives a written release executed by the subject of the biometric identifier or biometric information.

*See* 740 ILCS § 14/15(b).

25. BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS § 14/10.

26. Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and – most importantly here – fingerprints. *See* 740 ILCS § 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *Id*.

27. BIPA also establishes standards for how companies must handle Illinois citizens' biometric identifiers and biometric information. *See, e.g.,* 740 ILCS § 14/15(c)-(d). For example, BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or

FILED DATE: 10/28/2019 1:30 PM 2019CH12511

7

FILED DATE: 10/28/2019 1:30 PM   2019CH12511

biometric information without first obtaining consent for such disclosure. *See* 740 ILCS § 14/15(d)(1).

28.     BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information (740 ILCS § 14/15(c)) and requires companies to develop and comply with a written policy – made available to the public – establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS § 14/15(a).

29.     The Illinois legislature enacted BIPA due to the increasing use of biometric data in financial and security settings, the general public's hesitation to use biometric information, and – most significantly – the unknown ramifications of biometric technology. Biometrics are biologically unique to the individual and, once compromised, an individual is at heightened risk for identity theft and left without any recourse.

30.     BIPA provides individuals with a private right of action, protecting their right to privacy regarding their biometrics as well as protecting their rights to know the precise nature for which their biometrics are used and how they are being stored and ultimately destroyed.  Unlike other statutes that only create a right of action if there is a qualifying data breach, BIPA strictly regulates the manner in which entities may collect, store, use, and disseminate biometrics and creates a private right of action for lack of statutory compliance.

31.     Plaintiff, like the Illinois legislature, recognizes how imperative it is to keep biometric information secure. Biometric information, unlike other personal identifiers such as a social security number, cannot be changed or replaced if hacked or stolen.

FILED DATE: 10/28/2019 1:30 PM   2019CH12511

## II.  Defendant Violates the Biometric Information Privacy Act.

32.     By the time BIPA passed through the Illinois legislature in mid-2008, most companies who had experimented with using individuals' biometric data stopped doing so.

33.     However, Defendant failed to take note of the shift in Illinois law governing the collection, use and dissemination of biometric data. As a result, Defendant continues to collect, store, use, and disseminate employees' biometric data in violation of BIPA.

34.     Specifically, when employees are hired, Defendant scans, collects and obtains their fingerprints to enroll them in their employee database(s).

35.     Upon information and belief, Defendant places a biometric timekeeping device at each of its Clients' locations. All hourly employees are required to use their fingerprint to clock-in and clock-out for attendance purposes at their assigned Client location.

36.     Upon information and belief, Defendant disseminates its employees' biometric identifiers and/or information to an unknown third-party vendor.

37.     Upon information and belief, Defendant failed, and continues to fail, to inform its employees that they disclose or disclosed their fingerprint data to at least one third-party vendor for payroll purposes, and likely others; fails to inform employees that they disclose their fingerprint data to other, currently unknown, third parties, which host the biometric data in their data centers; fails to inform employees of the purposes and duration for which it collects their sensitive biometric data; and fails to obtain written releases from employees before collecting their fingerprint data.

38.     Furthermore, Defendant failed to publish a written, publicly available policy identifying its retention schedule and guidelines for permanently destroying employees'

FILED DATE: 10/28/2019 1:30 PM   2019CH12511

fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by BIPA.

39.     The Pay by Touch bankruptcy that catalyzed the passage of BIPA highlights why such conduct – where individuals are aware that they are providing a fingerprint but not aware to whom or for what purposes they are doing so – is dangerous. That bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing biometric identifiers, such as a fingerprint, who exactly is collecting their biometric data, where it will be transmitted and for what purposes, and for how long. Defendant disregards these obligations and their employees' statutory rights. Instead, Defendant unlawfully collects, stores, uses, and disseminates their employees' biometric identifiers and information, without ever receiving the individual's informed written consent required by BIPA.

40.     Upon information and belief, Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' biometric data and have not and will not destroy Plaintiff's and other similarly-situated individuals' biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with each company.

41.     Plaintiff and those similarly situated are not told what might happen to their biometric data if and when Defendant merges with another company or worse, if and when Defendant's entire business fold, or when the other third parties that have received employees' biometric data businesses fold.

42.     Since Defendant neither publishes a BIPA-mandated data-retention policy nor discloses the purposes for its collection and use of biometric data, Defendant's employees have no idea the extent to whom Defendant sells, discloses, re-discloses, or otherwise disseminate their

10

FILED DATE: 10/28/2019 1:30 PM   2019CH12511

biometric data. Nor are Plaintiff and the putative Class told to whom Defendant currently discloses their biometric data, or what might happen to their biometric data in the event of a merger or a bankruptcy.

43.     These violations have raised a material risk that Plaintiff's and other similarly-situated individuals' biometric data will be unlawfully accessed by third parties.

44.     By and through the actions detailed above, Defendant disregards Plaintiff's and other similarly-situated individuals' legal rights in violation of BIPA.

**III.     Plaintiff James Boyd's Experience**

45.     Plaintiff James Boyd worked for Lazer Spot from approximately July of 2016 to February of 2018, at various Amazon warehouses located at 1135 Remington Blvd. Romeoville, IL 60446,  250 Emerald Dr., Joliet IL 60433, and 201 Emerald Dr., Joliet IL 60433.

46.     Upon being hired, Defendant scanned, collected and/or obtained Boyd's fingerprint so Defendant could use it as an authentication method to track his time.

47.     Defendant subsequently stored Plaintiff's fingerprint data in its employee database(s).

48.     Plaintiff scanned his fingerprint each time he clocked in for work and clocked out of work, using Defendant's biometric timekeeping device.

49.     Plaintiff has never been informed of the specific limited purposes or length of time for which Defendant collected, stored, used, and/or disseminated his biometric data.

50.     Plaintiff has never been informed of any written, publicly available biometric data retention policy developed by Defendant, nor has he ever been informed of whether Defendant will ever permanently delete his biometric data.

FILED DATE: 10/28/2019 1:30 PM   2019CH12511

51.     Plaintiff has never been provided with nor ever signed a written release allowing Defendant to collect, store, use, or disseminate his biometric data.

52.     Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by Defendant's violations of BIPA alleged herein.

53.     No amount of time or money can compensate Plaintiff if his biometric data is compromised by the lax procedures through which Defendant captured, stored, used, and disseminated his and other similarly-situated individuals' biometrics. Moreover, Plaintiff would not have provided his biometric data to Defendant if he had known that they would retain such information for an indefinite period of time without his consent.

54.     A showing of actual damages is not necessary in order to state a claim under BIPA. *See Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 40 ("[A]n individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under the Act, in order to qualify as an "aggrieved" person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act").

55.     As Plaintiff is not required to allege or prove actual damages in order to state a claim under BIPA, he seeks statutory damages under BIPA as compensation for the injuries caused by Defendant. *Rosenbach*, 2019 IL 123186, ¶ 40.

## CLASS ALLEGATIONS

56.     Pursuant to the Illinois Code of Civil Procedure, 735 ILCS § 5/2-801, Plaintiff brings claims on his own behalf and as a representative of all other similarly-situated individuals pursuant to BIPA, 740 ILCS § 14/1, *et seq.*, to recover statutory penalties, prejudgment interest, attorneys' fees and costs, and other damages owed.

57.     As discussed *supra*, Section 14/15(b) of BIPA prohibits a company from, among

12

FILED DATE: 10/28/2019 1:30 PM   2019CH12511

other things, collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a

person's or a customer's biometric identifiers or biometric information, unless it first (1) informs

the individual in writing that a biometric identifier or biometric information is being collected or

stored; (2) informs the individual in writing of the specific purpose and length of time for which a

biometric identifier or biometric information is being collected, stored, and used; ***and*** (3) receives

a written release executed by the subject of the biometric identifier or biometric information. 740

ILCS § 14/15.

58.     Plaintiff seeks class certification under the Illinois Code of Civil Procedure, 735

ILCS § 5/2-801 for the following class of similarly-situated individuals under BIPA:

> All individuals working for Defendant in the State of Illinois who had their
> fingerprints collected, captured, received, obtained, maintained, stored, or disclosed
> by Defendant during the applicable statutory period.

59.     This action is properly maintained as a class action under 735 ILCS § 5/2-801

because:

     A.     The class is so numerous that joinder of all members is impracticable;

     B.     There are questions of law or fact that are common to the class;

     C.     The claims of the Plaintiff are typical of the claims of the class; and,

     D.     The Plaintiff will fairly and adequately protect the interests of the class.

**<u>Numerosity</u>**

60.     The total number of putative class members exceeds fifty (50) individuals.  The

exact number of class members can easily be determined from Defendant's payroll records.

**<u>Commonality</u>**

61.     There is a well-defined commonality of interest in the substantial questions of law

and fact concerning and affecting the Class in that Plaintiff and all members of the Class have been

harmed by Defendant's failure to comply with BIPA. The common questions of law and fact

FILED DATE: 10/28/2019 1:30 PM   2019CH12511

include, but are not limited to the following:

A.   Whether Defendant collected, captured or otherwise obtained Plaintiff's and the Class's biometric identifiers or biometric information;

B.   Whether Defendant properly informed Plaintiff and the Class of its purposes for collecting, using, storing and disseminating their biometric identifiers or biometric information;

C.   Whether Defendant obtained a written release (as defined in 740 ILCS § 14/10) to collect, use, store and disseminate Plaintiff's and the Class's biometric identifiers or biometric information;

D.   Whether Defendant has disclosed or re-disclosed Plaintiff's and the Class's biometric identifiers or biometric information;

E.   Whether Defendant has sold, leased, traded, or otherwise profited from Plaintiff's and the Class's biometric identifiers or biometric information;

F.   Whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of its last interaction with the individual, whichever occurs first;

G.   Whether Defendant complies with any such written policy (if one exists);

H.   Whether Defendant used Plaintiff's and the Class's fingerprints to identify them;

I.   Whether Defendant's violations of BIPA have raised a material risk that Plaintiff's biometric data will be unlawfully accessed by third parties;

J.   Whether the violations of BIPA were committed negligently; and

K.   Whether the violations of BIPA were committed intentionally and/or recklessly.

62.   Plaintiff anticipates that Defendant will raise defenses that are common to the class.

## **Adequacy**

63.   Plaintiff will fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Plaintiff and class members. Plaintiff,

14

FILED DATE: 10/28/2019 1:30 PM   2019CH12511

moreover, has retained experienced counsel that are competent in the prosecution of complex litigation and who have extensive experience acting as class counsel.

### Typicality

64.    The claims asserted by Plaintiff are typical of the class members he seeks to represent. Plaintiff has the same interests and suffers from the same unlawful practices as the class members.

65.    Upon information and belief, there are no other class members who have an interest individually controlling the prosecution of his or her individual claims, especially in light of the relatively small value of each claim and the difficulties involved in bringing individual litigation against one's employer. However, if any such class member should become known, he or she can "opt out" of this action pursuant to 735 ILCS § 5/2-801.

### Predominance and Superiority

66.    The common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it difficult for individual class members to vindicate their claims.

FILED DATE: 10/28/2019 1:30 PM   2019CH12511

67.     Additionally, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially more than if claims are treated as a class action. Prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant and/or substantially impair or impede the ability of class members to protect their interests. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

### **FIRST CAUSE OF ACTION**

**Violation of 740 ILCS § 14/15(a): Failure to Institute, Maintain and Adhere to a Written, Publicly-Available Retention Schedule**

68.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

69.     BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS § 14/15(a).

70.     Defendant fails to comply with these BIPA mandates.

71.     Defendant Lazer Spot, Inc., is a corporation registered to do business in Illinois during the statutory period and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS § 14/10.

FILED DATE: 10/28/2019 1:30 PM   2019CH12511

72.     Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by Defendant (in the form of their fingerprints), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS § 14/10.

73.     Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

74.     Defendant failed to publish a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS § 14/15(a).

75.     Upon information and belief, Defendant lack retention schedules and guidelines for permanently destroying Plaintiff's and the Class's biometric data and have not and will not destroy Plaintiff's and the Class's biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with the company.

76.     On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS § 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

FILED DATE: 10/28/2019 1:30 PM   2019CH12511

## SECOND CAUSE OF ACTION

**Violation of 740 ILCS § 14/15(b): Failure to Obtain Informed Written Consent and Release Before Obtaining Biometric Identifiers or Information**

77.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

78.     BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; ***and*** (3) receives a written release executed by the subject of the biometric identifier or biometric information…" 740 ILCS § 14/15(b) (emphasis added).

79.     Defendant fails to comply with these BIPA mandates.

80.     Defendant Lazer Spot, Inc., is a corporation registered to do business in Illinois during the statutory period and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS § 14/10.

81.     Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by Defendant (in the form of their fingerprints), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS § 14/10.

82.     Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

FILED DATE: 10/28/2019 1:30 PM   2019CH12511

83. Defendant systematically and automatically collected, used, stored and disseminated Plaintiff's and the Class's biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS § 14/15(b)(3).

84. Defendant never informed Plaintiff and the Class in writing that their biometric identifiers and/or biometric information were being collected, stored, used and disseminated, nor did Defendant inform Plaintiff and the Class in writing of the specific purpose(s) and length of term for which their biometric identifiers and/or biometric information were being collected, stored, used and disseminated as required by 740 ILCS § 14/15(b)(1)-(2).

85. By collecting, storing, using and disseminating Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Defendant violated Plaintiff's and the Class's rights to privacy in their biometric identifiers and/or biometric information as set forth in BIPA. *See* 740 ILCS § 14/1, *et seq*.

86. On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, use and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS § 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3)

FILED DATE: 10/28/2019 1:30 PM   2019CH12511

**THIRD CAUSE OF ACTION**

**Violation of 740 ILCS § 14/15(d): Disclosure of Biometric Identifiers and Information Before Obtaining Consent**

87.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

88.    BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS § 14/15(d)(1).

89.    Defendant fails to comply with this BIPA mandate.

90.    Defendant Lazer Spot, Inc., is a corporation registered to do business in Illinois during the statutory period and thus qualifies as a "private entity" under BIPA.  *See* 740 ILCS § 14/10.

91.    Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by Defendant (in the form of their fingerprints), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS § 14/10.

92.    Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

93.    Defendant systematically and automatically disclosed, redisclosed, or otherwise disseminated Plaintiff's and the Class's biometric identifiers and/or biometric information without first obtaining the consent required by 740 ILCS § 14/15(d)(1).

94.    By disclosing, redisclosing, or otherwise disseminating Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Defendant violated Plaintiff's and the Class's rights to privacy in their biometric identifiers and/or biometric information as set forth in BIPA. *See* 740 ILCS § 14/1, *et seq.*

FILED DATE: 10/28/2019 1:30 PM   2019CH12511

95.     On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, use and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS § 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

## PRAYER FOR RELIEF

Wherefore, Plaintiff James Boyd respectfully requests that this Court enter an Order:

A.     Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff James Boyd as Class Representative, and appointing Stephan Zouras, LLP, as Class Counsel;

B.     Declaring that Defendant's actions, as set forth above, violate BIPA;

C.     Awarding statutory damages of $5,000 for *each* intentional and/or reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for *each* negligent violation of BIPA pursuant to 740 ILCS § 14/20(1);

D.     Declaring that Defendant's actions, as set forth above, were intentional or reckless;

E.     Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including an Order requiring Defendant to collect, store, use, destroy and disseminate biometric identifiers and/or biometric information in compliance with BIPA;

F.     Awarding Plaintiff and the Class their reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3);

G.     Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and,

H.     Awarding such other and further relief as equity and justice may require.

21

FILED DATE: 10/28/2019 1:30 PM   2019CH12511

Date:   October 28, 2019

Respectfully Submitted,

*/s/ Ryan F. Stephan*
Ryan F. Stephan
James B. Zouras
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza
Suite 2150
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
Firm ID: 43734
rstephan@stephanzouras.com
jzouras@stephanzouras.com

FILED DATE: 10/28/2019 1:30 PM 2019CH12511

## **<u>CERTIFICATE OF SERVICE</u>**

I, the attorney, hereby certify that on October 28, 2019, I electronically filed the attached with the Clerk of the Court using the electronic filing system which will send such filing to all attorneys of record.

*/s/ Ryan F. Stephan*

# Exhibit B

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES BOYD, individually and on behalf of a class of similarly situated individuals | ) ) ) | |
| Plaintiff, | ) | Case No. |
| v. | ) ) | |
| LAZER SPOT, INC., a Georgia corporation, | ) ) ) | |
| Defendant. | ) ) | |

### AFFIDAVIT OF DANNY THOMAS IN SUPPORT OF NOTICE OF REMOVAL

I, DANNY THOMAS, declare as follows:

1.      I am over the age of 18 and competent to testify to the facts set forth herein.

2.      I am employed as Vice President of Finance at Lazer Spot, Inc. ("Lazer Spot"), the Defendant in this action.

3.      I submit this affidavit in support of Lazer Spot's Notice of Removal. Unless otherwise indicated, I make this declaration based on personal knowledge.

4.      Lazer Spot is a corporation incorporated under the laws of Georgia, and its principal place of business is in Alpharetta, Georgia.

5.      I have reviewed Lazer Spot's employment records and determined that the number of employees in Illinois from 2016 to present exceeds 484 persons.

6.      Plaintiff James Boyd clocked in and out of work using his fingerprint more than fifty (50) times over the course of his employment with Lazer Spot.

I declare under penalty of perjury and pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on December 12, 2019

DANNY THOMAS